UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
PIKEVILLE DIVISION

| | | |
|---|---|---|
| BRANDON MEADE, by and through his next friend and legal guardian, MAGGIE RENEA MEADE, | ) ) ) ) | Civil Action No. 7: 05-24-DCR |
| Plaintiff, | ) ) | |
| V. | ) ) | **MEMORANDUM OPINION** |
| GREAT AMERICAN ASSURANCE COMPANY, | ) ) ) | **AND ORDER** |
| Defendant. | ) ) | |

*** *** *** ***

This matter is before the Court for consideration of the cross-motions for summary judgment filed by Brandon Meade, by and through his next friend and legal guardian Maggie Renea Meade [Record No. 16], and Great American Assurance Company [Record No. 17]. Because there are no material, factual issues in dispute, the Court will grant Great American's motion for summary judgment. Meade's motion for summary judgment will be denied.

I.  BACKGROUND

On September 28, 2002 Brandon Meade was a passenger in a 1991 Plymouth Voyager mini-van. [Record No.17]  The mini-van was owned and operated by Brandon Meade's maternal grandfather, Tony Hall Jr. ("Hall"). [Record No. 16]  While traveling through Clark County, the mini-van was struck from behind by a vehicle being driven by Larry Mayes. As a result of that collision, Brandon Meade suffered various injuries.

Mayes had liability insurance with Kentucky Farm Bureau. After some negotiation, Farm Bureau tendered the limits of its policy. [Record No. 16] The plaintiff then sought additional under-insured motorist coverage ("UIM") from Great American Assurance Company ("Great American"). After Great American denied the claim, the plaintiff brought suit in Knott Circuit Court. Great American subsequently removed the case to this Court.

The plaintiff's father, Henry Meade Jr., holds a "Non-Trucking Liability and Physical Damage Auto Coverage Policy" with Great American. [Record No. 17] This coverage is part of a more complete policy issued by Great American which also provides collision coverage any time the semi-trailers are in use. [Record No. 19] Additionally, Henry Meade and his wife have an insurance policy with Nationwide Insurance that covers their personal vehicles. [Record No. 16]

## II.    LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. That is, the determination must be "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-52 (1986).

"Once a moving party has met its burden, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Keeneland Ass'n, Inc. v. Earnes*, 830 F.Supp. 974, 984 (E.D.Ky. 1993), *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415 (6th Cir. 2002).

Once the movant has satisfied this burden, the non-movant must go beyond the assertions made in the pleadings and come forward with specific evidence to demonstrate that there is a genuine issue of material fact. *Id.* The nonmoving party cannot rely upon the assertions in its pleadings; rather, that party must come forward with probative evidence, such as sworn affidavits to support its claims. *Celotex*, at 324. However, the trial court does not have a duty to search the entire record to establish that it is bereft of any genuine issue of material fact. *In re Morris*, 260 F.3d 654 (6th Cir. 2002). Rather, the nonmoving party has an affirmative obligation to direct the court's attention to those specific portions of the record upon which it seeks to rely to create genuine issues of material fact. *Id.*

In making this determination, the Court must review all the facts and the inferences drawn from those facts in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

### III.  ANALYSIS

The plaintiff's Complaint contains a number of allegations regarding Great American's refusal to cover the injuries sustained by Brandon Meade under his father's UIM coverage in the "Non-Trucking" portion of the policy with Great American. The Complaint includes allegations of wrongful denial of coverage and a subsequent claim for bad faith predicated on that refusal. Because the Court finds that the plaintiff is not entitled to coverage under the Great American policy, it need not reach the subsequent causes of action. Accordingly, summary judgment will be granted in favor of Great American on all counts.

### A. Policy Coverage

"Under Kentucky law, an insurance contract . . . must be construed according to its true character and purpose, in accordance with the intent of the parties." *Kentucky School Boards Ins. Trust v. State Farm Mut. Auto. Ins. Co.*, 1994 U.S. App. LEXIS 6676 at *7 (6th Cir. 1994). In construing insurance policies courts must "examine [them] as complete instruments to determine the extent of the coverage offered." *U.S. Fidelity and Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31, 33 (6th Cir. 1988)

As noted above, Henry Meade owns three different types of automotive/trucking insurance policies. Meade and his wife have car insurance with Nationwide on their personal vehicles, as required by Kentucky law. K.R.S. §304.39-080. Presumably, this policy would cover any injury sustained by Henry Meade, his wife, or his son Brandon while operating or riding in one of the personal vehicles. However, the Nationwide policy is not in issue in this case.

In his occupation as an owner/operator, Henry Meade also maintains insurance coverage of three semi-tractors. Coverage under that policy is at issue here. The policy is divided into two sections. The first part provides collision coverage when the semis are used to tow trailers. The second part provides coverage when the semi-tractor is "deadheading".[1]

The "deadheading" policy with Great American contains unambiguous language that the policy only covered Henry Meade's use of his semi-tractor in non-business situations. More specifically, the text of the policy in the liability section explicitly restricts Meade's coverage to non-business use. Although the UIM endorsement does not expressly exclude claims resulting from the business-related use of Henry Meade's semi-tractor, neither does the UIM endorsement expressly include coverage of such claims.

The multiple non-business use references in the "deadheading" policy lead this Court to conclude that a non-trucking use limitation is the basis for, and limitation to, this portion of the policy. It therefore also extends to the UIM endorsement. Beginning with the declarations to the policy and ending with the certificate of insurance, the Court finds references indicating that the policy is one for the "non-trucking use" of Henry Meade's vehicles. Where the terms of an insurance policy are clear and unambiguous, the policy should be enforced as written. *Sunny Ridge Enterprises, Inc. v. Fireman's Fund Ins. Co., Inc.,* 132 F.Supp.2d 525 (E.D.Ky. 2001)

Here, the policy's various references to 'non-trucking use' reinforce the conclusion that the lack of an express non-trucking use limitation in the UIM endorsement does not require

---

[1] "Deadheading" is the operation of a tractor-trailer or a truck where the trailer or truck is empty and contains no cargo; a vehicle without a load." *Prestige Cas. Co. v. Michigan Mut. Ins. Co.*, 99 F.3d 1340, 1343 (6th Cir. 1996) *citing* 4 Saul E. Sorkin, *Goods in Transit*, § 45.01[1](1994).

Great American to provide coverage for UIM or any other claim arising out of the business use of Henry's semi-tractor. Nor does it cover Henry Meade's use of his personal vehicles, or provide coverage for a claim made by his son while riding in a minivan owned and operated by his grandfather.

In addition, the plaintiff cannot reasonably establish a reliance claim. He relies upon *Simon v. Continental Insurance Company*, 724 S.W.2d 210 (Ky. 1986), which generally holds that an insured is entitled to all he may reasonably expect to be provided under the policy. Further, it is well-established that insurance law requires that insurance policies be construed liberally in favor of the insured. *Fidelity & Deposit Co. of Maryland v. Courtney* 103 F. 599 (6th Cir. 1900), *citing American Surety Co. v. Pauly*, 170 U.S. 133, 144 (U.S. 1898). However, even under this standard, the plaintiff cannot establish reliance.

The evidence presented suggests that Henry Meade did not purchase his "deadheading" policy with the subjective intent that it cover anything other than that specific use of his semi-tractors. He maintained separate insurance coverage for his semis when they were in business, or cargo-carrying, use. Additionally, Henry Meade and his wife maintained coverage with a different insurance company for their personal vehicles.

Next, the insured could not reasonably have had the objective intent to have his "deadheading" policy extend to his personal vehicles or family. Henry Meade paid between $116 and $167 per month per semi-tractor for collision coverage, and an additional, unknown amount for personal vehicle coverage through Nationwide. The cost of Henry Meade's "deadheading" insurance was only $32 per month per semi-tractor. [Record No. 17] Thus, he

could not have reasonably believed he had purchased comprehensive insurance for himself, his entire family, and for the non-trucking use of his three semis for this amount.

As the Court has found that the language of the policy is unambiguous and that the plaintiff could not have reasonably relied on coverage under the "non-trucking" policy, summary judgment will be granted to Great American on Count I of the Amended Complaint.

### B. Bad Faith

In order for the plaintiff to prevail on his bad faith claims, he must establish that the insurer is obligated to pay the claim under the terms of the policy; the insurer lacks a reasonable basis in law or in fact for denying the claim; and the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard. *Wittmer v. Jones*, 864 S.W.2d 885 (Ky. 1993). As the Court has determined that Great American is not obligated to pay the claim, the Court will grant summary judgment for Great American on Counts II and III of the Amended Complaint.

### IV. CONCLUSION

For the reasons discussed herein, it is **ORDERED** that Defendant Great American Assurance Company's motion for summary judgment [Record No. 17] is **GRANTED**; Plaintiff Brandon Meade's motion for summary judgment [Record No. 16] is **DENIED**.

This 20th day of September, 2005.



Signed By:
*Danny C. Reeves* DCR
United States District Judge